IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MAX H.**[1], | Case No. 6:21-cv-611 |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Ari D. Halpern, HALPERN LAW GROUP PC, 62910 OB Riley Rd, Suite 100, Bend, OR 97703. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; and Kelly Arefi, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Max H. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying his application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court affirms the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff applied for SSI on August 7, 2018, alleging disability beginning on November 15, 2012. AR 85, 316. The agency denied his claim both initially and upon

reconsideration, and Plaintiff requested a hearing. AR 115, 130, 137. At the hearing, Plaintiff

amended his alleged onset date to August 7, 2018. AR 40. Plaintiff's date of birth is May 28,

1994, and he was 24 years old as of the alleged disability onset date. AR 86. Plaintiff appeared

for a hearing before an ALJ in August 2020. AR 34. The ALJ issued a decision denying

Plaintiff's claim for benefits. AR 13-26. Plaintiff requested review of the ALJ's decision, which

the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the

agency and Plaintiff seeks judicial review of that decision

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20

C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    § 416.920(a)(4)(i). This activity is work involving significant mental or
    physical duties done or intended to be done for pay or profit. *Id.*
    § 416.910. If the claimant is performing such work, she is not disabled
    within the meaning of the Act. *Id.* § 416.920(a)(4)(i). If the claimant is not
    performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? *Id.* § 416.920(a)(4)(ii). An impairment or combination of
    impairments is "severe" if it significantly limits the claimant's physical or
    mental ability to do basic work activities. *Id.* § 416.921(a). Unless
    expected to result in death, this impairment must have lasted or be
    expected to last for a continuous period of at least 12 months. *Id.*
    § 416.909. If the claimant does not have a severe impairment, the analysis

ends. *Id.* § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. *Id.* § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. *Id.* §§ 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. *Id.* §§ 416.920(a)(4)(v), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that

the claimant can perform other work existing in significant numbers in the national economy, the

claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ conducted the sequential analysis as noted above. At step one, the ALJ found

that Plaintiff had not engaged in substantial gainful activity since August 7, 2018. AR 15. At step

two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of

inflammatory arthritis, posttraumatic stress disorder (PTSD), anxiety, depression, and gender

dysphoria. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that

meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1. AR 16.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 416.967(b) except the claimant
> can occasionally climb ramps and stairs, but not climb ladders,
> ropes, or scaffolds. He can frequently balance, kneel, and crouch.
> He can occasionally stoop and bend. He cannot crawl. He can
> frequently handle and finger bilaterally. He should have no
> exposure to vibrations or to hazards, such as dangerous machinery
> and unprotected heights. He can perform simple, routine tasks with
> a DOT GED Reasoning Level of 2, or less. He can have occasional
> interaction with coworkers and supervisors, but should no[t]
> interact with the public. He should have a static work environment
> with few changes in routines or settings.

AR 17. At step four, the ALJ concluded Plaintiff was unable to perform past relevant work.

AR 24. At step five, the ALJ found that, considering Plaintiff's age, education, work experience,

and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy.

AR 25. The ALJ thus concluded that Plaintiff was not disabled. AR 26.

## DISCUSSION

Plaintiff argues the ALJ erred by discounting Plaintiff's symptom testimony, discounting the medical opinions of Kimberly Richards and Amy Hoag, and discounting the lay witness testimony of Plaintiff's spouse. The Court addresses each argument in turn.

### A.  Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms

and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See*

*Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ discounted Plaintiff's symptom testimony due to the improvement of his physical and mental impairments with treatment. *See* AR 18-22. The ALJ also stated that Plaintiff's mental health treatment was routine and conservative. AR 22. The Court does not find that Plaintiff's mental health treatment was routine or conservative, considering that Plaintiff sought out regular therapy for his mental impairments, at times more than once a week, throughout the period of alleged disability. Thus, to the extent the ALJ discounted Plaintiff's testimony about his mental health symptoms due to routine and conservative treatment, the Court finds that reason is not supported by the record. Additionally, Plaintiff contends that the ALJ also discounted Plaintiff's testimony due to his daily living activities. The ALJ, however, only addressed Plaintiff's daily living activities at step three to determine whether Plaintiff's impairments meet or equal a listing. *See* AR 16-17. Thus, the Court below addresses whether substantial evidence supports the ALJ's conclusion that Plaintiff's impairments improved with treatment.

### 1. Improvement with Treatment – Physical Symptoms

A claimant's improvement with treatment "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Plaintiff testified that due to arthritis, he cannot lift more than ten pounds, that his hands most days are inflamed and swollen, and that he feels an electrical surge and drops things almost every time he tries to lift anything. AR 63. The ALJ discounted Plaintiff's testimony related to these physical symptoms because his treatment records show significant improvement. Substantial evidence supports the ALJ's finding.

In July 2018, two weeks before the amended alleged onset date, Plaintiff reported to Dr. Rebecca Callis that while taking Methotrexate, his joint pain "fe[lt] much better" and that he was "[t]hinking about getting a desk job." AR 355. Dr. Callis noted that Plaintiff was almost "100% better" on Methotrexate and was not having any side effects. *Id.* Dr. Callis conducted a physical exam and noted that Plaintiff showed no joint swelling in any of the examined joints. AR 355-56. In October 2018, Dr. Anthony Kahr conducted an exam of 28 joints and found no clear synovitis and only mild fullness in Plaintiff's wrists and "prominent" joints in Plaintiff's fingers. AR 568. In Dr. Kahr's follow-up exams throughout the period of alleged disability, Dr. Kahr repeatedly noted that Plaintiff showed no signs of synovitis and that Plaintiff's joint pain was well-controlled. *See* AR 585 (stating in November 2018 that Plaintiff showed "no clear synovitis"); AR 627 (stating the same in February 2019); AR 1000 (stating the same in April 2019); AR 1006 (stating the same in August 2019); AR 1020, 1023-24 (stating in November 2019 that Plaintiff's joint pain was "fairly well controlled" and that Plaintiff was "[n]egative for joint swelling" and showed "no clear synovitis"); AR 1035-36 (stating in December 2019 that Plaintiff was "[n]egative for joint swelling" and showed "no clear synovitis"); AR 1252 (stating in February 2020 that Plaintiff showed "no clear synovitis"); AR 1288 (stating the same in June 2020).

This  evidence shows that Plaintiff's arthritis has improved throughout the duration of the

period of alleged disability. Plaintiff also argues, however, that the ALJ failed to identify the

specific evidence in the record and the specific conflicting testimony and therefore runs afoul of

*Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015). The Court is not persuaded. The ALJ

identified Plaintiff's specific testimony (such as testimony about Plaintiff's inability to lift more

than ten pounds and joint pain) and devoted eight paragraphs to linking that testimony to the

many treatment records from Drs. Callis and Kahr that indicate Plaintiff showed no signs of joint

swelling and that Methotrexate controlled Plaintiff's symptoms. AR 18-19.

Plaintiff also contends that the ALJ only picked out a few periods of temporary

improvement. But as explained above, Drs. Callis and Kahr repeatedly noted throughout the

duration of the period of alleged disability that Plaintiff showed no signs of joint swelling.

Plaintiff points the Court to no evidence in the record showing that these notes are only periodic

improvements, and the Court has identified none. Thus, substantial evidence supports the ALJ's

finding that Plaintiff's physical symptoms improved with treatment.

### 2.  Improvement with Treatment – Mental Health

A claimant's improvement with treatment is "an important indicator of the intensity and

persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3). "[E]vidence of medical treatment

successfully relieving symptoms can undermine a claim of disability." *Wellington v.*

*Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre*, 439 F.3d at 1006 ("Impairments

that can be controlled effectively with medication are not disabling for the purpose of

determining eligibility for SSI benefits."). "Reports of 'improvement' in the context of mental

health issues must be interpreted with an understanding of the patient's overall well-being and

the nature of her symptoms and with an awareness that improved functioning while being treated

and while limiting environmental stressors does not always mean that a claimant can function

effectively in the workplace." *Garrison*, 759 F.3d at 1017 (cleaned up). "The fact that a person

suffering from depression makes some improvement does not mean that the person's impairment

no longer seriously affects his ability to function in a workplace." *Ghanim v. Colvin*, 763

F.3d 1154, 1162 (9th Cir. 2014) (cleaned up).

> As the Ninth Circuit explained in *Garrison*,

>> It is error to reject a claimant's testimony merely because
>> symptoms wax and wane in the course of treatment. Cycles of
>> improvement and debilitating symptoms are a common occurrence,
>> and in such circumstances, it is error for an ALJ to pick out a few
>> isolated instances of improvement over a period of months or years
>> and to treat them as a basis for concluding a claimant is capable of
>> working.

*Garrison*, 759 F.3d at 1017.

Plaintiff testified that due to his PTSD, he gets nightmares every night, which make it

difficult to sleep through the night and require him to take naps the following day. AR 46, 53.

Plaintiff also testified that he gets flashbacks due to his PTSD several times a day, which causes

him to "shut down" and sleep all day. AR 46. Plaintiff also testified that he is hypervigilant and

easily startled when in public and that he cannot keep his mood constant even with medication.

AR 47. The ALJ rejected this testimony because the record shows that Plaintiff's mental health

improved with therapy and prescribed medication.

Substantial evidence supports this finding. In August 2018, one week after the amended

alleged onset date, Plaintiff reported "positive gains from therapy with emotional regulation,

coping skills, symptoms of trauma and outlook on life." AR 466. Plaintiff also reported "gains

from using EMDR to process memories to be less traumatic." *Id.* Plaintiff then moved from

Salem to La Pine, Oregon and attended individual and group therapy sessions. *See* AR 656, 662.

After establishing care with a therapist in La Pine, Plaintiff reported in December 2018

that the "medicine [was] working good" and that Plaintiff was "doing much better with sleep,

PAGE 11 – OPINION AND ORDER

mood and panic attacks" but continued to struggle with nightmares. AR 653. In January 2019, Plaintiff reported improved mood, sleep, and anxiety and that he felt he was on the right medications. AR 645-46. In early March 2019, Plaintiff reported that he felt he needed a medication change, and later that month after a medication change, he reported that he was doing "much better" and felt his mood was more stable. AR 980, 988-89. In April 2019, Plaintiff reported he was doing better and that there were many positive changes in his life, though he was still struggling with nightmares. AR 966. In June 2019, after an adjustment in his medication, Plaintiff reported an increase of nightmares. AR 952. Then, after changing medication, Plaintiff reported in July 2019 that he was "doing awesome" with his nightmares and mood regulation. AR 947. In October 2019, Plaintiff reported that he felt the medications were no longer working and that he was having nightmares more frequently. AR 895, 905.

Beginning in 2020, Plaintiff consistently reported improvement and success with medication and therapy. In January 2020, Plaintiff reported that his sleep had been good. AR 868. Throughout that year and up to the hearing date, Plaintiff's treatment notes reflect that Plaintiff consistently expressed improvement in his PTSD and anxiety and successfully used the tools learned in therapy. *See* AR 1646 (noting that on February 6, 2020, Plaintiff reported he was doing well and exhibited success and progress in anxiety symptoms); AR 1643 (noting that on February 20, 2020, Plaintiff demonstrated improvement with use of Eye Movement Desensitization and Reprocessing Therapy, though also noting he still struggled with some symptoms of anxiety and trauma); AR 1641 (noting that on February 25, 2020, Plaintiff reported he was doing "amazing, awesome!"); AR 1630-31 (noting that on February 28, 2020, Plaintiff reported he was feeling "[a]wesome"); AR 1626-27 (noting that on April 3, 2020, Plaintiff reported he was feeling "so much better" and that he stated: "I just feel super uplifted and I have

a smile that kind of hurts from laughing so hard . . . ."); AR 1624 (noting that on April 7, 2020,

Plaintiff reported that his week had been "awesome"); AR 1627-28 (noting that on April 9, 2020,

Plaintiff was laughing and upbeat when completing mental health reassessment survey with a

mental health specialist); AR 1625-26 (noting that on April 10, 2020, Plaintiff stated that he

"feel[s] great" and that he "just love[s] life and all the things [he has] been blessed with");

AR 1623 (noting that on April 14, 2020, Plaintiff reported that techniques learned in therapy

helped him increase self-compassion).

The record supports the ALJ's conclusion that Plaintiff's mental health has improved

with treatment. Although Plaintiff periodically reported increased nightmares earlier in the

period of alleged disability, Plaintiff's providers adjusted his medication accordingly and saw

effective results. Plaintiff also consistently demonstrated success with learning coping skills and

processing his trauma in therapy. Further, the ALJ accounted for Plaintiff's remaining limitations

due to his mental impairments by restricting Plaintiff to simple, routine tasks and no interaction

with the public. AR 17. Thus, improvement with treatment was a clear and convincing reason

supported by substantial evidence to discount Plaintiff's testimony about his mental health. The

ALJ therefore did not err by discounting Plaintiff's testimony.

## B.  Medical Opinion Evidence

Plaintiff filed his application for benefits on August 7, 2018. For claims filed on or after

March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate

medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical*

*Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer

"weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R.

§ 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that

the agency does not defer to any particular medical opinions, even those from treating sources.

*Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is likewise incompatible with the revised regulations. . . . Even under the new

PAGE 14 – OPINION AND ORDER

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Ms. Richards and Ms. Hoag both opined that due to Plaintiff's mental impairments, Plaintiff would miss work five or more days per month and would be off task at least 30 percent of the time. AR 686, 1137. The ALJ found Ms. Richards and Ms. Hoag's opinions not persuasive because they conflicted with the mental health treatment notes in the record, treatment notes from medical providers, and Drs. Sergiy Barsukov and Ben Kessler's medical opinions. AR 24. Substantial evidence supports this finding.

As discussed above, the treatment notes related to Plaintiff's mental health, including Ms. Richards and Ms. Hoag's treatment notes, demonstrate that Plaintiff's mental health has considerably improved with therapy and medication. This medical evidence therefore conflicts with Ms. Richards and Ms. Hoag's opinions that Plaintiff suffers from extreme limitations. Ms. Richards and Ms. Hoag's opinions also conflict with Drs. Barsukov and Kessler's opinions that Plaintiff is not significantly limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms" and is not significantly limited in his ability to maintain regular attendance. AR 95, 111. Substantial evidence supports the ALJ's finding that Ms. Richards and Ms. Hoag's opinions are not consistent with the record. Thus, the ALJ did not err in discounting Ms. Richards and Ms. Hoag's opinions.

## C.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's

testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

PAGE 16 – OPINION AND ORDER

Plaintiff argues that the ALJ erred by failing to discuss the lay witness testimony of Plaintiff's spouse. The Commissioner argues that because Plaintiff's spouse testified to no greater limitations than Plaintiff, any error in failing to discuss Plaintiff's spouse's testimony was harmless. The Court agrees. Because the Court finds the ALJ did not err in evaluating Plaintiff's symptom testimony, the ALJ's error in failing to discuss Plaintiff's spouse's testimony is harmless. *See Molina*, 674 F.3d at 1117-18.

## D.  Step Five Finding

Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the RFC posed to the VE did not incorporate limitations included in Plaintiff's testimony, Ms. Richards' opinion, Ms. Hoag's opinion, and Plaintiff's spouse's testimony. Because the Court has concluded that the ALJ committed no harmful error in rejecting those opinions and testimony, substantial evidence supports the ALJ's step five finding.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 29th day of July, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge